IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL OWEN KENNEDY,

    Plaintiff,                        No. CIV S-05-2343 DAD

    vs.

MICHAEL J. ASTRUE,               <u>ORDER</u>
Commissioner of Social Security,[1]

    Defendant.
_____/

        After oral argument on October 27, 2006, this social security action was submitted to the court for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons explained below, the decision of the Commissioner of Social Security (Commissioner) is reversed and the case is remanded for calculation of benefits.

**PROCEDURAL BACKGROUND**

        Plaintiff Michael Owen Kennedy applied for Disability Insurance Benefits under Title II of the Social Security Act (the Act) on July 10, 2003. (Transcript (Tr.) at 66-68.) The Commissioner denied plaintiff's application initially and on reconsideration. (Tr. at 42-45, 56-

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Mr. Astrue is substituted as defendant in this suit pursuant to 42 U.S.C. § 405(g) and Fed. R. Civ. P. 25(d)(1).

1

60.) Plaintiff requested review of the record by an administrative law judge (ALJ). (Tr. at 63.) Plaintiff waived his right to representation and his right to appear before the ALJ.[2] (Tr. at 64-65.) In a decision issued on June 16, 2004, the ALJ denied plaintiff's claim. (Tr. at 29-37.) The ALJ entered the following findings:

> 1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits only through December 31, 2000.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 3. The claimant's posttraumatic stress syndrome, depression and anxiety are considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).
>
> 4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No.4.
>
> 5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.
>
> 6. From April 1, 2000 to December 31, 2000, the claimant has the residual functional capacity to perform simple, repetitive tasks with limited interaction with others.
>
> 7. The undersigned finds that the claimant's posttraumatic stress disorder, depression and anxiety only caused him to experience mild restrictions of his activities of daily living and moderate difficulties maintaining social functioning. He experienced moderate deficiencies of concentration, persistence or pace, and there is no indication that he has ever had an episode of decompensation of extended duration. The claimant retained the basic understanding and memory, sustained concentration and persistence, social interaction and adaptation skills necessary to engage in substantial gainful activity.
>
> 8. The claimant was unable to perform any of his past relevant work (20 CFR § 404.1565).

---

[2] Plaintiff wished to expedite the scheduling of review by a judge, believed the evidence was extensive and self-explanatory, and was confident that benefits would be granted on the basis of his doctor's written diagnosis of debilitating depression and PTSD. (Tr. at 65.)

    9. The claimant was a "younger individual between the ages of 45 and 49" (20 CFR § 404.1563).[3]

    10. The claimant had "more than a high school (or high school equivalent) education" (20 CFR § 404.1564).

    11. The claimant had no transferable skills (20 CFR § 404.1568).

    12. The claimant has no exertional limitations (20 CFR § 404.1545).

    13. Considering the range of work at all levels that the claimant is still functionally capable of performing, in combination with his age, education, and work experience, and using section 204.00 of the Medical-Vocational Guidelines as a framework for decision-making, the claimant is not disabled (Social Security Rulings 83-14, 85-15, and, 96-9p).

    14. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(f)).

(Tr. at 36-37.)

The Appeals Council (Council) denied review of the ALJ's decision on August 15, 2005, but subsequently set aside that action in order to consider additional information submitted by plaintiff. (Tr. at 4, 17-20.) Upon consideration of the additional information, the Council denied review on November 1, 2005. (Tr. at 4-7.) Plaintiff then sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on November 29, 2005.

**LEGAL STANDARD**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are

---

[3] This finding is erroneous. As the ALJ correctly noted elsewhere in the written decision, plaintiff was 57 years old when the decision was issued (tr. at 30) and was 54 years old on his date last insured (tr. at 34). Plaintiff was a person "closely approaching advanced age." 20 C.F.R. 404.1563(d).

conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920. See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). This five-step process can be summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

**APPLICATION**

In his motion for summary judgment, the pro se plaintiff relies on the allegations of his complaint.  In his complaint, plaintiff cites the fact that he has been diagnosed by the Veterans Administration (VA) as 100% disabled due to PTSD acquired during his tour of duty as a combat medic in Viet Nam after he was drafted in 1968.  Plaintiff contends that defendant has misinterpreted his claim and the documents submitted in support of that claim.

Having carefully reviewed the record in light of plaintiff's allegations and arguments, the court finds that the ALJ's findings as to steps one through four of the sequential analysis are supported by substantial evidence in the record as a whole.  The court affirms the Commissioner's findings that (1) plaintiff was not engaging in substantial gainful activity; (2) plaintiff had three severe impairments – PTSD, anxiety, and depression – that had their onset prior to December 31, 2000; (3) plaintiff's severe impairments did not, individually or in combination, meet or equal a listed impairment; and (4) plaintiff was not capable of performing his past work in the field of business which included management, sales and marketing.  At step five, however, the ALJ was required to determine whether plaintiff had the residual functional capacity to perform any other work.  The court finds that the ALJ's findings at step five are not supported by substantial evidence in the record as a whole and the Commissioner has failed to meet his burden of proof on the issues of plaintiff's residual functional capacity to perform other

/////

work and the existence of other work that plaintiff can perform consistent with his residual functional capacity and his age.

First, the ALJ's findings at step five are, as plaintiff argues, predicated on an erroneous interpretation of the January 14, 2004 decision of the Veterans Administration (VA) concerning plaintiff's VA disability rating. The ALJ found that the VA had "concluded that the claimant is 100 percent disabled, under its standard, by posttraumatic stress disorder effective May 22, 2003" and that plaintiff "was only 50 percent disabled before that date." (Tr. at 33.) Giving great weight to the VA's decision as so interpreted, the ALJ found that the VA's decision and the VA's treatment and examination records supported a finding that plaintiff's condition had worsened in 2003, years after his date last insured, and that he was not fully disabled prior to May 22, 2003. (Tr. at 34.) The ALJ found that plaintiff's pre-2003 "lifestyle, including his active pursuit of employment, frequent golfing, and failure to pursue treatment," also revealed that plaintiff was only 50 percent disabled prior to May 22, 2003. (Tr. at 34.)

The ALJ's interpretation of the VA's decision is fatally flawed because the sole significance of the May 22, 2003 date is that the VA received plaintiff's claim for benefits on that date. (See tr. at 251.) In its initial rating decision dated July 25, 2003, the VA had rated plaintiff as 50 percent disabled due to PTSD. (Tr. at 250-51.) After plaintiff objected to that rating on August 27, 2003, a review officer found evidence of total occupational and social impairment that had worsened between July 2003 and January 2004. (Tr. at 250-51.) Plaintiff's PTSD was found to be 100 percent disabling, his rating was increased to 100 percent effective on the date his claim had been received by the VA, and he was awarded full benefits. (Tr. at 251, 254.) The VA's decision contains no findings concerning the degree of plaintiff's disability prior to May 22, 2003. (Tr. at 251-54.) The VA's disability rating as of May 22, 2003, sheds no light on the extent to which plaintiff was disabled on December 31, 2000.

Apart from the mistaken interpretation of the VA's decision, the ALJ's determination concerning plaintiff's residual functional capacity between April 1, 2000, and

6

December 31, 2000, rests solely on findings regarding plaintiff's "lifestyle, including his active pursuit of employment, frequent golfing, and failure to pursue treatment." (Tr. at 34.) The ALJ relied on these findings to determine that plaintiff was only 50 percent disabled until May 22, 2003, and to discredit plaintiff's statements concerning the severity of his impairments between April 1, 2000, and December 31, 2000. (Tr. at 31, 34.) The court finds that the evidence in the administrative record concerning plaintiff's pursuit of employment, golfing, and failure to pursue treatment does not support the ALJ's findings concerning either plaintiff's residual functional capacity or the credibility of plaintiff's statements concerning the impact of his impairments on his ability to work between April 1, 2000, and December 31, 2000.

It is well established that once a claimant has presented evidence of an underlying impairment the Commissioner may not discredit the claimant's testimony as to the severity of his symptoms merely because the testimony is unsupported by objective medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). Indeed, "the ALJ can reject the claimant's testimony about the severity of [his or] her symptoms only by offering specific, clear and convincing reasons for doing so." Light, 119 F.3d at 792. See also Reddick, 157 F.3d at 722.

Here, the ALJ found plaintiff's statements "not entirely credible in light of discrepancies between the claimant's assertions and information contained in the documentary reports and the reports of the treating and examining practitioners." (Tr. at 31.) The sole example cited by the ALJ of a purported discrepancy is that plaintiff "sought very little treatment for any significant mental or physical problem between his alleged onset date, April 1, 2000 and his last date insured, December 31, 2000." (Id.)

The Ninth Circuit Court of Appeals has recognized that "'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (quoting Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989)). In this action, plaintiff's initial diagnosis of PTSD

7

was made by the VA in 1999 when plaintiff's complaints of chest pain were determined to be stress-related. (Tr. at 123.) Plaintiff was told by VA staff in 1999 that he exhibited the symptoms of PTSD and had "lived a life typical of someone suffering from the problems common to PTSD." (Tr. at 40.) Plaintiff declined the treatment offered by the VA in 1999 and early 2000 for three reasons: (1) he was suspicious of the proposed treatment because the focus appeared to be on his childhood and he believed the VA doctors were bent on determining that his problems were not service-related; (2) he was optimistic about a job opportunity that did in fact result in employment in January 2000; and (3) he was uncomfortable with opening up to questions about his conditions. (Tr. at 41.) Plaintiff declined medication because he fears the potential for drug addiction, given his own abuse of alcohol and the drug abuse he witnessed in Viet Nam. (Tr. at 55.) Plaintiff's treatment-avoidance appears to be consistent with the nature of PTSD and does not support the ALJ's conclusion that plaintiff's statements about the severity of his impairments are not credible. See Victor E. Stevenson, "Premature Treatment Termination by Angry Patients with Combat-Related Post-Traumatic Stress Disorder," Military Medicine (May 2000), http://findarticles.com/p/articles/mi_qa3912/is_200005/ai_n8891281 ("The anger experienced by patients with combat-related PTSD tends to result in treatment avoidance, interferes with the initiation and maintenance of treatment, and often leads to premature treatment termination.").

The ALJ suggests an additional discrepancy with regard to plaintiff's statements about playing golf "most days of the week" and going out of his home as little as possible. (Tr. at 31 (citing Exs. 2E and 3E).) In a daily activities questionnaire dated August 5, 2003, plaintiff responded as follows concerning activities "on an average day":

/////
/////
/////
/////

|  |  |
|---|---|
| weekdays - | job search 6:30 am to 11 am |
|  | when possible golf some 11:30 - 3:30 |
|  | check search responses 4 - 5 |
|  | eat & TV 5 - 9 |
| weekends - | home doing job search & watching TV |

(Tr. at 79.) In response to a question concerning types of activities or hobbies he enjoys and spends time on, plaintiff answered, "Golf, I spend $135/mth." (Tr. at 80.) Plaintiff also answered "Golf" in response to a question concerning type of activities or hobbies he engages in for entertainment.[4] (Tr. at 82.) Other responses reflect plaintiff's preference for living alone (tr. at 79), his habit of going out of his home as little as possible but of generally going to the golf course or the grocery store when he goes out (tr. at 81), his lack of motivation to go out (id.), his rare contact with family members (tr. at 82), and his lack of participation in community, church, sports, or social groups (id.). The court finds no inconsistency that casts doubt on the credibility of plaintiff's statements concerning the severity of his impairments.

        The ALJ also found that plaintiff's active pursuit of employment, considered together with his golfing and treatment decisions, revealed that plaintiff was not totally disabled by PTSD prior to 2003. (Tr. at 34.) The ALJ's rationale is not clear. Plaintiff does not claim that he is unable or unwilling to work. His mental impairments interfere with his ability to obtain and retain employment. As plaintiff explained in a letter dated December 12, 2003, he would prefer to work and receive the wages he previously earned than to live on what Social Security can provide.[5] (Tr. at 50.) The Commissioner has not demonstrated that plaintiff's active pursuit of employment calls into question his credibility concerning the severity of his impairments.

/////

---

    [4] In support of his December 12, 2003 request for reconsideration of the denial of his Social Security claim, plaintiff submitted a copy of a "Stressor Letter" he had prepared in support of his VA application. (Tr. at 49-55.) He indicated that the exhaustion of his funds during nine years of unemployment had eliminated his ability to golf. (Tr. at 54.)

    [5] The record of plaintiff's yearly earnings shows that he earned $128,263.98 in 1992, $57,600.00 in 1993, and $60,660.00 in 1994. (Tr. at 70.) Plaintiff earned $43,370.56 during the three months he worked in 2000. (Id.)

9

For the reasons set forth above, the court finds that the Commissioner has failed to offer specific, clear and convincing reasons for rejecting plaintiff's statements about the severity of his symptoms. By improperly discounting the credibility of plaintiff's statements, and having misinterpreted the VA's decision, the ALJ erroneously concluded that plaintiff's impairments "only caused him to experience mild restrictions of his activities of daily living and moderate difficulties maintaining social functioning," as well as "moderate deficiencies of concentration, persistence or pace," while retaining "the basic understanding and memory, sustained concentration and persistence, social interaction and adaptation skills necessary to engage in substantial gainful activity." (Tr. at 34.)

In a Daily Activities Questionnaire dated August 5, 2003, plaintiff states that PTSD caused him to lose five jobs due to poor interaction with bosses, that depression makes it difficult for him to find and respond to job listings while unemployed, and that lack of interpersonal relationships makes it almost impossible for him to gain help and referrals while searching for a job. (Tr. at 83.) The administrative record supports a conclusion that plaintiff's ability to respond appropriately to supervision, co-workers, and usual work situations was severely impaired by May 1994. Between March 1970, when plaintiff left the United States Army, and May 1994, plaintiff held eight jobs, had been fired three times, and left one job in advance of being terminated. (Tr. at 78.) Between May 1994 and January 2000, plaintiff was unable to obtain employment. (Tr. at 71.) He was employed for three months in 2000 and left in advance of being fired. (Tr. at 71, 78.) He has been unable to obtain employment since March 2000, despite extensive efforts to find work. (Tr. at 71.) Although plaintiff reported a successful relationship with "a nurturing mentoring type manager" who was remote in location and engaged in hands off management, he was generally unable to communicate well with managers. (Tr. at 53-54.) Plaintiff first learned of PTSD when he was diagnosed in 1999, but he did not perceive the significance of the diagnosis with regard to his employment history until he was forced to leave his last job after three months in 2000 for the same reasons that led to his being fired from

three previous jobs and his departure from another job from which he would have been fired. (Tr. at 40, 50, 78, 83, 261.)

Plaintiff's difficulties were not limited to interaction with managers. In progress notes dated November 25, 2003, Peter Berman, Ph.D. who treats plaintiff at the VA's Stockton Outpatient Clinic, reported plaintiff's revelation that one of his bosses "sent him to a shrink to get psych testing because he was having problems with getting along with people at work." (Tr. at 118.) Plaintiff's anger and irritability issues and his difficulty in getting along with people in general are well documented in the medical records. (Tr. at 123, 128, 147, 217.) In a report dated July 15, 2003, Dr. Berman notes that (1) plaintiff's PTSD symptoms include problems with memory and concentration as well as anger and irritability issues, (2) plaintiff has had a difficult time in his interpersonal relationships, and (3) plaintiff "has not worked for nine years because of his PTSD symptoms." (Tr. at 148.) Dr. Berman determined that plaintiff's PTSD is related to his experiences in the service, based on the fact that plaintiff has had symptoms since shortly after his service and there is nothing else in his history that would explain his symptoms. (Id.)

Also in the administrative record is a Psychiatric Review Technique form dated October 30, 2003, in which the reviewer found insufficient evidence to render a medical disposition of disability but found plaintiff's functional limitations marked in the areas of maintaining social functioning and maintaining concentration, persistence, or pace.[6] (Tr. at 103, 111.)

After noting plaintiff's statement that he has lost many jobs and has had great trouble finding a new position because of PTSD, the ALJ commented that plaintiff "has not specified what his condition was like before December 31, 2000." (Tr. at 31.) Plaintiff's last employment ended in March 2000. It is self-evident that virtually all of plaintiff's statements

/////

---

[6] On the five point scale for rating the degree of functional limitations, "marked" is second only to "extreme." (Tr. at 111.)

11

concerning the impact of PTSD on his employment served to describe his condition before December 31, 2000.

Basic work activities include use of judgment, responding appropriately to supervision, co-workers, and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." Social Security Ruling (SSR) 85-15, 1985 WL 56857, at *4 (S.S.A.). "A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base" and "would justify a finding of disability because even favorable age, education, or work experience will not offset a severely limited occupational base." Id.

SSR 85-15 provides an example that is on point:

> Example 1: A person whose vocational factors of age, education, and work experience would ordinarily be considered favorable (i.e,, very young age, university education, and highly skilled work experience) would have a severely limited occupational base if he or she has a mental impairment which causes a substantial loss of ability to respond appropriately to supervision, coworkers, and usual work situations. A finding of disability would be appropriate.

(Id.)

In this case, plaintiff's PTSD, depression, and anxiety caused plaintiff to suffer a substantial loss of ability to respond appropriately to supervision, co-workers, and usual work situations over a period of years. The effect of that loss of ability rendered plaintiff essentially unemployable by May 1994, and his brief employment in 2000 demonstrated his continuing inability to respond appropriately to supervision, co-workers, and work situations. Pursuant to SSR 85-15, plaintiff would have a severely limited occupational base under the best of circumstances, and, as a person who was 54 on December 31, 2000, plaintiff was closely

1  approaching advanced age.  The ALJ erroneously determined that, from April 1, 2000 to
2  December 31, 2000, plaintiff had the residual functional capacity to perform simple, repetitive
3  tasks with limited interaction with others.  A finding of disability is appropriate.

## CONCLUSION

The decision whether to remand a case for additional factual findings or to simply award benefits is within the discretion of the court.  <u>Ghokassian v. Shalala</u>, 41 F.3d 1300, 1304 (9th Cir. 1994); <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506 (9th Cir. 1990).  In this regard, the Ninth Circuit Court of Appeals has stated that, "'[g]enerally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed.'"  <u>Ghokassian</u>, 41 F.3d at 1304 (quoting <u>Varney v. Sec'y of Health & Human Servs.</u>, 859 F.2d 1396, 1399 (9th Cir. 1988)).  When an ALJ's ruling is not supported by substantial evidence, a reviewing court may remand the case solely for calculation of benefits or for further development of the record.  See <u>Rosa v. Callahan</u>, 168 F.3d 72, 82-83 (9th Cir. 1999).  The former course is appropriate when the reviewing court has "no apparent basis to conclude that a more complete record might support the Commissioner's decision."  <u>Id</u>. at 83.

In this case, there is no apparent basis to conclude that a more complete record might support the Commissioner's decision.  The court will remand the case for a calculation of benefits.

Accordingly, the court HEREBY ORDERS that:

1. Plaintiff's motion for summary judgment is granted;
2. Defendant's cross-motion for summary judgment is denied;

/////
/////
/////
/////

3. The decision of the Commissioner is reversed; and

4. This matter is remanded solely for calculation of benefits.

DATED: March 14, 2007.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1/orders.socsec/kennedy2343.order

14